IN THE COURT OF APPEALS OF TENNESSEE

FILED

**December 8, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| THEOREN J. MURVIN and<br>MELODY S. MURVIN, | ) | C/A NO. 03A01-9702-CH-00055 |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | HAMILTON COUNTY CHANCERY COURT |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| THOMAS F. COFER and | ) | |
| CYNTHIA H. COFER, | ) | |
| | ) | HONORABLE HOWELL N. PEOPLES, |
| Defendants-Appellants. | ) | CHANCELLOR |


For Appellants

JERRY H. SUMMERS
JIMMY F. RODGERS, JR.
Summers & Wyatt, P.C.
Chattanooga, Tennessee

For Appellees

PAUL CAMPBELL III
WILLIAM R. HANNAH
Campbell & Campbell
Chattanooga, Tennessee


O P I N I O N


VACATED IN PART
AFFIRMED IN PART
REMANDED WITH INSTRUCTIONS                     Susano, J.

This dispute arose out of the sale of a residence in Signal Mountain, Tennessee. The trial court found that the sellers, Thomas F. Cofer and wife, Cynthia H. Cofer, had violated the Tennessee Consumer Protection Act of 1977 ("the Act") in connection with the sale of their five-bedroom, two and a half-bath residence to the plaintiffs, Theoren J. Murvin and wife, Melody S. Murvin. The Cofers appealed, arguing that the Act does not apply to this transaction, and that the evidence does not show that the Cofers "knowingly withheld information from the [Murvins] to constitute fraud."

The Murvins contend, on the other hand, (1) that the evidence does not preponderate against the trial court's finding that the Cofers willfully and affirmatively misrepresented the condition of the property; (2) that the Act applies to this transaction; (3) that the defendants cannot rely upon the inapplicability of the Act because they agreed in the trial court that it was applicable; (4) that, even if the Act is not applicable to the facts of this case, there is sufficient evidence in the record to sustain the trial court's judgment on the plaintiffs' alternative theories of recovery; (5) that we erred in staying execution of the judgment; and, finally, (6) that this appeal is frivolous, entitling the plaintiffs to damages pursuant to T.C.A. § 27-1-122.[1]

---

[1]T.C.A. § 27-1-122 provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

## I.  *Standard of Review*

Our review of this non-jury case is *de novo* on the record; however, that record comes to us with a presumption that the trial court's factual findings are correct.  Rule 13(d), T.R.A.P.  We must honor this presumption unless we find that the evidence preponderates against those findings.  ***Id.; Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).  The trial court's conclusions of law, however, are not afforded the same deference.  ***Campbell v. Florida Steel***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is tempered by the well-established rule that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal.  ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn.App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn.App. 1991).  In fact, this court has noted that

> ...on an issue which hinges on witness
> credibility, [the trial court] will not be
> reversed unless, other than the oral
> testimony of the witnesses, there is found in
> the record clear, concrete and convincing
> evidence to the contrary.

***Tennessee Valley Kaolin v. Perry***, 526 S.W.2d 488, 490 (Tenn.App. 1974).

3

II. *Facts*

The plaintiffs purchased the subject residence for $174,500. The purchase was closed on April 15, 1994. The plaintiffs first saw and toured the house on February 20, 1994, at which time they were furnished a three-page document signed by the defendants entitled "Seller's Disclosure of Condition of Property." The plaintiffs were at the house for approximately an hour, during which time they did not notice any problems.

On April 16, 1994, the plaintiffs moved into their new residence. Following their occupancy, rain produced water leaks from the upstairs ceiling and water in the basement. Thereafter, they discovered numerous structural and other problems.

The plaintiffs sued the defendants on April 26, 1995. Their complaint sought "equitable remedies and legal damages" against the defendants "for fraud, intentional and/or negligent misrepresentation, breach of contract, and negligence." After reciting facts to demonstrate the trial court's jurisdiction and venue, the complaint sets forth a "factual background." The remainder of the allegations of the complaint are grouped under three headings: violations of the Act; common law fraud; and negligent construction and repair. The complaint prays for damages, attorney's fees, and costs under the Act, including treble damages under T.C.A. § 47-18-109(a)(3).[2] In the

---

[2]T.C.A. § 47-18-109(a)(3) provides as follows:

> If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may

5

alternative, the complaint seeks compensatory and punitive damages "for defendants' fraudulent misrepresentations."

The defendants' answer, among other things, denies the plaintiffs' operative allegations under the Act. As particularly pertinent to one of the issues before us on this appeal, the defendants responded that they

> would show that [the defendant Mr. Cofer] has not engaged in the business of a residential builder or a general contractor,...

### III.  *Trial Court's Judgment*

The trial court found that the plaintiffs were entitled to compensatory damages of $4,294 as a result of damage done to the driveway and front lawn by the defendants at and about the time they moved from the subject residence. The court specifically found that these damages, while compensable, "were [not] caused...by the violations of the...Act."

Turning to the plaintiffs' other complaints regarding structural, water-related and numerous other defects and deficiencies, the trial court made specific findings:

> The Court finds that the plaintiffs relied upon the [defendants'] disclosure documents in purchasing the house. The plaintiffs may also have relied upon an inspection to be made...by a Veterans Administration inspector; however, the fact that they may

> provide such other relief as it considers necessary and proper.

6

have also relied upon that inspection does
not take away from the fact that

in making the purchase, the offer and price, and      also in weighing the inspection by a VA inspector, they were also entitled to rely upon the disclosures made by the defendants.

The Court finds that the defendants are not engaged in the business of building houses for resale, that the house in question was initially built by the defendants to be used as their residence, and they subsequently determined that they would sell that house after they had contracted to purchase another house.

The Court finds that there were significant problems with the house at 2908 Reynard Trail, and that those problems preexisted the sale of the house to the plaintiffs, and that the defendants had an obligation to disclose certain of those problems to the plaintiffs. This duty of disclosure arises under the Tennessee Consumer Protection Act found at TCA 47-18-101 and subsequent numbers.

The defendants also made a disclosure required of persons selling real estate,...and that disclosure was incomplete, and at least in certain areas, incorrect.

In pertinent part, the Court finds that the disclosure statement...should have at least revealed the fact that the house had never passed inspection by the Building Inspector, that there were problems with the stairwell, and that the house had not been constructed by a licensed builder or contractor, that there had been leaks in the roof, and that the problems of water and mud in the basement had not been cured.

It's significant to note that both Mr. Cofer and his realtor admitted in their testimony that he failed to disclose matters that a buyer would want to know prior to purchase of a house.

*   *   *

Mr. Greer [the plaintiffs' expert] has also testified as to other defects in the home which he attributed in part to poor construction, in part to violations of building codes, in part to the use of improper materials, and in part to poor workmanship.  These matters all can be traced

8

> to the fact that an unlicensed contractor or builder...construct[ed] this home. It can be traced to the fact that the home never passed a final building inspection. The amount necessary to correct these problems as testified by Mr. Greer was $40,403.

The trial court then concluded that the actual damages associated with the defendants' violations of the Act should be doubled:

> In an action of this nature under the Consumer Protection Act, TCA 14-18-109 provides that the Court may award treble damages for a violation of the Act, if the Court finds that the unfair or deceptive act or practice was a willful or knowing violation of the Act.
>
> In this case, the Court does find that there was a willful or knowing violation of the Act.

Finally, the trial court held that the plaintiffs were entitled to recover reasonable attorney's fees under T.C.A. § 47-18-109(e)(1)[3] and later set those fees at $15,669.95.

The court awarded a total judgment of $100,769.95, broken down as follows:

| | |
|---|---|
| Damages not associated with the Act | $ 4,294.00 |
| Actual damages under the Act | 40,403.00 |
| Double damages under the Act | 40,403.00 |
| Attorney's Fees | 15,669.95 |
| | $100,769.95 |
| | ========== |

---

[3]T.C.A. § 47-18-109(e)(1) provides as follows:

> Upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs.

IV.  *Ganzevoort v. Russell*


After this case was tried, the Supreme Court released its opinion in the case of **Ganzevoort v. Russell**, 949 S.W.2d 293 (Tenn. 1997).  A unanimous Supreme Court ruled that the Act does not apply when, as in **Ganzevoort**, the defendant is "not in the business of selling property as owners or brokers." **Id**. at 298. In so holding, the Court relied heavily upon the fact that two of the stated purposes of the Act, as set forth in T.C.A. § 47-18-102(2)&(4) refer, respectively, to "unfair and deceptive acts or practices *in the conduct of any trade or commerce*" and "persons *engaged in business*."  949 S.W.2d at 298.  (Emphasis added.)  The court pointed out that

> [a]lthough this language does not explicitly exclude from the Act sellers not in the business of selling property as owners or brokers, a reasonable construction is that they are not included.


The Supreme Court, in affirming the Court of Appeals' reversal of the trial court's judgment in favor of the purchasers of a residence, specifically stated that it reached a "different conclusion" from that arrived at in the decision of the District Court in the case of **Klotz v. Underwood**, 563 F.Supp. 335, 337 (E.D. Tenn. 1982), *aff'd*, 709 F.2d 1504 (6th Cir. 1983).  *See* **Ganzevoort**, 949 S.W.2d at 298 n.3.  In holding that the Act applied to the sale of a residence between a homeowner and purchaser, the federal court had stated that it did not

11

> find any persuasive indication in the Act
> that it does not apply to isolated sales
> between individuals.

*Id.* at 337. *Klotz* was later followed in the unreported Tennessee Court of Appeals' case of *Edwards v. Bruce*, C/A No. 01A01-9510-CH-00458, 1996 WL 383294 (Court of Appeals at Nashville, July 10, 1996).

The plaintiffs in the instant case relied at trial on the *Klotz* and *Edwards* cases in arguing that the Act applies to the instant case even though the Cofers were not engaged in the business of selling houses.[4]

The plaintiffs argue before us that there are significant differences between *Ganzevoort* and the instant case and that those differences are such as to militate in favor of a ruling that the Act does apply to the instant sale. They rely heavily upon the fact that Mr. Cofer, in effect, acted as his own contractor when he built his house in 1989: he hired and paid the subcontractors, he arranged for the permits, and, to the extent the construction was supervised, he did so. They also point out that in *Ganzevoort* the sellers had no information regarding defects in the house other than as reported to them by their realtor and a carpenter hired to correct the problems; that the purchasers in *Ganzevoort* did not rely on anything that the sellers said about the house; that the sellers in that case tried

---

[4]Apparently, the trial court's attention was not called to another unreported decision of the Court of Appeals that expressly disagreed with the conclusion reached in the *Klotz* case. *See White v. Eastland*, C/A No. 01A01-9009-CV-00329, 1991 WL 149735 (Court of Appeals at Nashville, August 9, 1991).

12

to correct the problems; that the sellers in *Ganzevoort* did not act as their own contractor; and that there were no statements or representations regarding the residence's condition in that case.

The plaintiffs also rely on the following language in *Ganzevoort*:

> Brokers, agents and other professional sellers of real property have knowledge and information superior both in quantity and quality to that of an average residential purchaser regarding factors and conditions that affect the value of the property they are offering for sale.

*Id*. at 299. This statement was made in connection with the Supreme Court's analysis of the *real estate agent's* liability in that case. While it is true that the Cofers, and particularly Mr. Cofer, had superior knowledge regarding the problems with the house, this does not change the fact that the basic holding of *Ganzevoort*--that the Act does not apply to a sale by an individual not in the business of selling houses--applies with equal force to the factual scenario before us. As we read *Ganzevoort,* the criteria for applying the Act is not the extent of a seller's knowledge--sellers almost always have more knowledge about their houses than do buyers--but whether or not the seller is engaged in the *business* of selling houses. The defendants in *Ganzevoort* were not; the Cofers were not. We find and hold that the Act does not apply to the subject transaction.

13

V.  *Waiver and Prospective Application*


The plaintiffs contend that even if the Act does not apply to this transaction, the defendants cannot rely upon its inapplicability because, according to the plaintiffs, the defendants did not assert this position at trial.  They rely upon those cases holding that "questions not raised in the trial court will not be entertained on appeal."  **Lawrence v. Stanford**, 655 S.W.2d 927, 929 (Tenn. 1983).  *See also* **Tops Bar-B-Q, Inc. v. Stringer**, 582 S.W.2d 756, 758 (Tenn.App. 1977); **Devorak v. Patterson**, 907 S.W.2d 815, 818 (Tenn.App. 1995); **Atkins v. Kirkpatrick**, 823 S.W.2d 547, 551 (Tenn.App. 1991).


When this case was tried below, both sides believed, based on the **Klotz** and **Edwards** cases, that the Act applied to a casual sale of a residence between individuals.  The plaintiffs asserted this in their trial brief, and counsel for the defendants expressed his view of the then-current state of the law when he remarked in his opening statement as follows:


> ...I think the [plaintiffs'] trial brief
> insofar as it talks about the law accurately
> states the law with respect to the Consumer
> Protection Act.  That Act has now been
> expanded to cover real estate.  We don't
> quarrel with that.


In closing argument, counsel for the defendants again stated that


> [t]he Consumer Protection Act certainly does
> cover real estate.  That's been established.
> I don't quarrel with that.


14

The plaintiffs argue that these statements reflect that it was the defendants' position below that the Act applied to the *transaction* before the court and that this position precludes them from raising a **Ganzevoort** defense in this case.  We disagree.

The defendants' answer controverted *all* of the plaintiffs' allegations with respect to the Act.  It had the effect of denying each and every element of the plaintiffs' alleged cause of action under the Act, including the plaintiffs' allegation that the Act applies to the facts of this case.  If the Act did not apply, the plaintiffs could not rely on its provisions to sustain their claim for damages.  All of the elements of the plaintiffs' alleged cause of action under the Act--including its applicability--were "in play" as a result of the issues made by the pleadings.  As previously indicated, the answer specifically states that the defendants are not engaged in the business of selling houses--the linchpin of the ruling in **Ganzevoort**.

We do not understand counsel's comments as a waiver of the issues made in the pleadings.  While it is true that *both* parties believed, based on the **Klotz** and **Edwards** cases, that the Act applied, we cannot find in the record before us any conduct on the part of the defendants or their counsel that would preclude their reliance on **Ganzevoort** on this appeal.  Both parties--and also the trial judge--proceeded on the assumption that **Klotz** and **Edwards** expressed "good law."  **Ganzevoort**, after

15

the fact, held otherwise. The issue was sufficiently raised below to allow the defendants to raise it here. Furthermore, it is clear "that questions of law are not subject to stipulation by the parties to a lawsuit and that a stipulation purporting to state a proposition of law is a nullity." *Mast Advertising & Publishing, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993).

As to the plaintiffs' argument that *Ganzevoort* should be given prospective application only, we find nothing in that case to suggest that it should not apply to the facts of this case. In *Ganzevoort*, the Supreme Court held, in effect, that the Act has *never* been applicable to a casual sale of a residence. The fact that there was a holding of a federal district court and a decision of the Court of Appeals to the contrary does not change this fact. This is not a case where the Supreme Court *changes* the law and specifically limits the cases to which it is applicable. *See*, e.g., *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992). The Supreme Court interpreted the Act as originally enacted. This means that the inapplicability of the Act to a casual sale of a residence has always been the law even though it was only recently pronounced authoritatively by the Supreme Court.

We find and hold that the issue of whether the Act applies to the facts of this case was before the lower court; is controlled by *Ganzevoort;* and is properly before us.

16

VI.  *Basic Damage Award*


Having determined that no portion of the judgment below can be predicated on a finding that these casual sellers violated the Act, we now turn to the plaintiffs' argument that the damages found to be associated with the Act can be sustained on one or more of the plaintiffs' alternate theories.  We agree that the basic damage award associated with alleged violations of the Act can be upheld on the plaintiffs' alternative theory of common law fraud.


The elements of a fraud claim are set forth in the case of **Stacks v. Saunders**, 812 S.W.2d 587 (Tenn.App. 1990):


> The basic elements for a fraud action are:
> (1) an intentional misrepresentation with
> regard to a material fact, (citation
> omitted); (2) knowledge of the representation
> falsity--that the representation was made
> "knowingly" or "without belief in its truth,"
> or "recklessly" without regard to its truth
> or falsity, (citation omitted); (3) that the
> plaintiff reasonably relied on the
> misrepresentation and suffered damage,
> (citations omitted); and (4) that the
> misrepresentation relates to an existing or
> past fact, (citation omitted),...


**Id**. at 592.  This subject is further addressed in the case of **Lonning v. Jim Walter Homes, Inc.**, 725 S.W.2d 682 (Tenn.App. 1986):


> For concealment or non-disclosure to
> constitute fraud, the party charged with
> fraud must have knowledge of an existing fact
> or condition and a duty to disclose the fact
> or condition.  (Citation omitted).  A party
> to a contract has a duty to disclose to the

17

> other party any material fact affecting the
> essence of the subject matter of the
> contract, unless ordinary diligence would
> have revealed the undisclosed fact.

*Id*. at 685.

In the instant case, the trial court found that the defendants "fail[ed] to adequately and completely disclose factors that were of importance to the purchaser of a house, information which was known to the defendants and not easily or readily obtainable by the plaintiffs." The trial court found that the disclosure statement signed by the defendants "was incomplete, and at least in certain areas, incorrect." The court found that these misrepresentations were made willfully or knowingly.

The evidence does not preponderate against these findings. While the lower court did not openly question the credibility of Mr. Cofer, its findings of fact necessarily involve a finding that he lacked credibility. As previously indicated, this credibility determination is entitled to great weight on this appeal as we evaluate the preponderance of the evidence. *See Tennessee Valley Kaolin*, 526 S.W.2d at 490.

The court found--and the evidence does not preponderate against such a finding--that the defendants failed to reveal to the purchasers that the house had failed three inspections by the building inspector, even though the defendant Mr. Cofer acknowledged that this was something in which a purchaser would be interested. This fact was not reflected on the disclosure

18

statement, despite the fact the statement had the following request for information:

> Please state any other facts or information relating to this property that would be of concern to a buyer.

Furthermore, there was an abundance of proof from which the trial court could and did find that the disclosure statement failed to reveal a problem with water in the basement and leaks in the roof. While the disclosure statement did disclose prior water problems in the basement, it also reflected that those problems had been "corrected by [a] sump pump." When asked on the statement if the roof "leak[ed] or has it previously leaked," the defendants checked the "No" line. There was evidence, and reasonable inferences that could be drawn from that evidence, from which one could reasonably conclude that both of these representations were false and known by the defendants to be false when made.

The disclosure statement reflects that there had been no "settling, flooding, drainage, grading or soil problems." The plaintiffs' expert testified to a number of problems falling within these areas.

The trial court found that many of the problems testified to by the plaintiffs' expert could "be traced to the fact that an unlicensed contractor or builder...construct[ed] this home [and that] the home never passed a final building inspection." If the defendants had made a full and complete

19

disclosure, it is logical to assume--and the plaintiffs so testified--that the plaintiffs would not have purchased the residence and would not have sustained the various damages clearly shown by the evidence in this case.

The evidence does not preponderate against an award of damages of $40,403 based on the defendants' fraudulent misrepresentations.  For this reason, we approve this portion of the judgment.  We can affirm a trial court's judgment if the result is correct even though we disagree with the lower court's reasoning.  Rule 36(a), T.R.A.P.  *See also* **Kelly v. Kelly**, 679 S.W.2d 458, 460 (Tenn.App. 1984).

As to the trial court's finding that the plaintiffs are entitled to recover an additional amount of $4,294 because of damage done by the defendants to the driveway and front yard at and about the time the defendants vacated the property, the defendants in their brief concede their liability for these damages.

It results that the basic damage award of $44,697 is affirmed.

VII.  *Can the Doubling of the Award be Sustained as Punitive Damages?*

The plaintiffs argue that, even if the double damages award cannot be sustained pursuant to the authority of T.C.A. § 47-18-109(a)(3), it can be upheld as punitive damages.  As

previously indicated, the plaintiffs sought punitive damages on their alternative theory of common law fraud.

It is true that the trial court specifically found a "willful or knowing violation of the Act," as contemplated in T.C.A. § 47-18-109(a)(3). While "willful" is not defined in the Act, "knowing" is. It is defined as

> ...actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have had reason to know of the falsity or deception.

T.C.A. § 47-18-103(6). The plaintiffs argue that this finding necessarily means that the court found facts that would justify an award of punitive damages. We do not believe that this is *necessarily* true.

In Tennessee, it is clear that punitive damages are "restrict[ed]...to cases involving only the most egregious of wrongs." *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). A court may "award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id*. Such an award is only appropriate when the necessary conduct has been shown "by clear and convincing evidence." *Id.*

We cannot say that the trial court's findings under T.C.A. § 47-18-109(a)(3) satisfy the quality or quantity of proof

21

required under *Hodges* to sustain an award of punitive damages. Since there was no evidence of the defendants' financial condition, the trial court was not in a position to evaluate this aspect of the punitive damages inquiry. Under *Hodges*, generally speaking, this is one factor that a fact finder should consider when a request for punitive damages has been made. *Id*. Furthermore, the trial court did not indicate whether it found, by "clear and convincing evidence," the egregious conduct required by *Hodges*. We cannot extrapolate the trial court's findings regarding the defendants' intentional misrepresentations into the requisite finding of egregious conduct contemplated by *Hodges*.

Accordingly, we vacate so much of the trial court's judgment as adds additional damages of $40,403 under T.C.A. § 47-18-109(a)(3). Since the Act does not apply and since we cannot say that there is a factual predicate for punitive damages, we cannot sustain this portion of the trial court's award.

While the trial court did not make findings that would sustain an award of punitive damages, we recognize that it did make findings that clearly reflect its determination that the defendants were guilty of intentional misrepresentations. In view of this finding and in view of the fact that the parties and the trial court were understandably focused on the Act, we hold that it is appropriate to remand this case to the trial court to hold a hearing to determine whether the plaintiffs are entitled to punitive damages. We recognize that it was the plaintiffs' burden as a part of their proof-in-chief to present evidence of

22

the defendants' financial condition;[5] but just as we are not inclined to penalize the defendants for trying this case as if the Act applied, we do not believe that the plaintiffs should be penalized for doing the same thing. We find and hold that justice requires a remand for a hearing on the issue of punitive damages. *See* T.C.A. § 27-3-128.[6] In doing so, we express no opinion as to whether the plaintiffs are entitled to punitive damages. This determination must be made in the first instance by the trial court.

## VIII. *Attorney's Fees*

The trial court's award of attorney's fees was based upon a finding that the defendants violated the Act. Since the Act is not applicable to this transaction, that award cannot stand. Such fees are not recoverable as compensatory damages under any of the plaintiffs' alternative theories.

## IX. *Other Issues Raised by Plaintiffs*

In view of our decision in this case, we do not find it necessary to reach the plaintiffs' issue regarding our stay of

---

[5]The defendants did not seek a bifurcated hearing on punitive damages. *See* **Hodges**, 833 S.W.2d at 901.

[6]T.C.A. § 27-3-128 provides as follows:

> The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

23

execution.  We find no merit in the plaintiffs' contention that this appeal was frivolous.

X.  *Conclusion*

So much of the trial court's judgment as awards attorney's fees of $15,669.95 and double damages under the Act is hereby vacated.  The remainder of the judgment reflecting an award of $44,697 and taxing costs below is affirmed.  This case is remanded to the trial court for the entry of an order reflecting this modification of the judgment, and for the holding of another hearing to determine whether the plaintiffs are entitled to punitive damages.  Exercising our discretion, we tax the costs on appeal to the appellants and their surety.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Herschel P. Franks, J.

_____
William H. Inman, Sr.J.