# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

**FILED**

**July 7, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **JERRY NELMS as next of kin and** | ) | Shelby County Circuit Court |
| **Executor of the Estate of INEZ NELMS**, | ) | No. 81726 T.D. |
|  | ) |  |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9805-CV-00137 |
|  | ) |  |
| **WALGREEN CO.**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

From the Circuit Court of Shelby County at Memphis.
**Honorable John R. McCarroll, Jr., Judge**

**James M. Simpson**,
**Heather C. Webb**,
ALLEN, SCRUGGS, SOSSAMAN & THOMPSON, P.C., Memphis, Tennessee
**Robert E. Hoskins**, FOSTER & FOSTER, Greenville, South Carolina
Attorneys for Plaintiff/Appellant.


**Dale H. Tuttle**, GLASSMAN, JETER, EDWARDS & WADE, P.C., Memphis, Tennessee
Attorney for Defendant/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiff Jerry Nelms, as next of kin and executor of the estate of his deceased wife, Inez Nelms, appeals the trial court's judgment awarding him the sum of $25,000 in compensatory damages but denying his request for punitive damages. We affirm the trial court's judgment based upon our conclusion that the court properly directed a verdict in favor of Defendant/Appellee Walgreen Company on the Plaintiff's claim for punitive damages.

In the fall of 1995, Inez Nelms suffered from depression that was associated with other health problems she had experienced over the years. Nelms' physician, Kirby Smith, prescribed the drug Paxil to treat Nelms' depression. On October 2, 1995, Plaintiff Jerry Nelms took a written prescription for Paxil to Walgreen Company's pharmacy on Knight Arnold Road in Memphis. The Plaintiff returned later that evening to pick up the filled prescription.

Approximately two weeks later, the Plaintiff returned to the same Walgreen Company pharmacy to pick up a refill of his wife's Paxil prescription. Upon his return home, the Plaintiff noticed that the pills were smaller than the ones Inez Nelms had been taking. The Plaintiff returned to the pharmacy and learned that the first prescription had contained Tagamet pills instead of Paxil pills. While Paxil is a drug commonly used to treat depression, Tagamet generally is prescribed to treat stomach ailments, such as indigestion and ulcers. Paxil pills and Tagamet pills are not similar in appearance; they are different sizes and colors. The Walgreen Company pharmacist on duty informed the Plaintiff that the pharmacy had made a mistake in filling Inez Nelms' Paxil prescription on October 2, 1995.

In November 1995, Inez Nelms was hospitalized for thrombocytopenia, or a low platelet count, the symptoms of which included bruising and mouth sores. Nelms blamed this condition on the Tagamet that she had taken as a result of the mistake of Walgreen Company's pharmacy. Consequently, Nelms filed this lawsuit against Walgreen Company for the negligent filling of her Paxil prescription. Nelms' complaint sought both compensatory and punitive damages. After Inez Nelms' death in October 1997, Jerry Nelms was substituted as the Plaintiff in this action as Inez Nelms' next of kin and as executor of her estate.

At trial, the evidence initially suggested that Walgreen Company pharmacist Ed

Daniel had filled Inez Nelms' Paxil prescription on October 2, 1995. The computer-generated prescription label contained Daniel's initials, indicating that Daniel was the pharmacist who filled the prescription at 7:19 p.m.; however, Walgreen Company's schedules, which were introduced at trial, indicated that Daniel's shift was scheduled to end at 5:00 p.m. on that day. The original written prescription contained no pharmacist's initials, although the Tennessee Board of Pharmacy's regulations and Walgreen Company's policies required the pharmacist who filled the prescription to initial the original prescription form.[1]

As a result of this discrepancy in Walgreen Company's records, the Plaintiff sought to show that a pharmacy technician, rather than a licensed pharmacist, filled Inez Nelms' Paxil prescription in violation of both the Board of Pharmacy's regulations and Walgreen Company's policies. Walgreen Company employed pharmacy technicians to assist its pharmacists in filling prescriptions. In filling the typical prescription, pharmacy technicians were permitted to obtain customer information, generate a computer prescription label, pull and count the medication, place the medication in the correct vial or bottle, and affix thereto the computer-generated label. The pharmacist on duty then was required to verify the prescription's accuracy before approving it for the customer's purchase. According to the Plaintiff's theory, a pharmacy technician filled and dispensed Inez Nelms' Paxil prescription without obtaining the approval of the pharmacist on duty.[2]

Another Walgreen Company pharmacist, Steve Presson, testified that he had spoken with Ed Daniel two or three times during the last six months of 1995 about concerns Presson had with Daniel's performance. Specifically, Presson was concerned because Daniel would become distracted by other job duties and he would allow prescriptions to stack up waiting for his verification. Presson could not say for sure, however, if Daniel was the pharmacist on duty at 7:19 p.m. on October 2, 1995, when Inez Nelms' Paxil prescription was filled. Presson himself might have been the pharmacist on duty at that time because, according to Walgreen Company's records, Presson was scheduled to work from 1:00 p.m. to 10:00 p.m. on that day.

---

[1]*See* Tenn. Comp. R. & Regs. 1140-3-.05(1)(e) (now 1140-2-.01(13)(c) (as revised in July 1998)).

[2]*See* Tenn. Comp. R. & Regs. 1140-3-.05(1)(d) (now 1140-2-.01(13)(b) (as revised in July 1998)) (requiring pharmacist to perform final verification of product prior to dispensing).

At the conclusion of this evidence, the trial court granted Walgreen Company's motion for directed verdict on the Plaintiff's claim for punitive damages. The trial court submitted the Plaintiff's claim for compensatory damages to the jury, which returned a verdict for the Plaintiff in the amount of $25,000. On appeal from the trial court's judgment entered on the jury's verdict, the Plaintiff's sole contention is that the trial court erred in directing a verdict on his claim for punitive damages.

We begin our analysis of this issue with the premise that courts may award punitive damages only in the most egregious of cases. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992); *accord Murvin v. Cofer*, 968 S.W.2d 304, 311 (Tenn. App. 1997). Accordingly, in evaluating a motion for a directed verdict on the issue of punitive damages, the trial court must determine whether the plaintiff has presented clear and convincing evidence that the defendant has engaged in intentional, fraudulent, malicious, or reckless conduct. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d at 901; *Wasielewski v. K Mart Corp.*, 891 S.W.2d 916, 919 (Tenn. App. 1994). This higher standard of proof is appropriate given the twin purposes of punitive damages awards: "to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future." *Id*. at 900-01. As our supreme court has explained, "fairness requires that a defendant's wrong be clearly established before punishment, as such, is imposed; awarding punitive damages only in clearly appropriate cases better effects deterrence." *Id*. at 901.

This court recently described the clear and convincing evidence standard, explaining that

> [a]lthough it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. App. 1995); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. App. 1992). In order to be clear and convincing, evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992); *O'Daniel v. Messier*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. App. 1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the

truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977); *Goldsmith v. Roberts*, 622 S.W.2d 438, 441 (Tenn. App. 1981); *Brandon v. Wright*, 838 S.W.2d at 536.

*Bingham v. Knipp*, No. 02A01-9803-CH-00083, 1999 WL 86985, at \*3 (Tenn. App. Feb. 23, 1999) (*no perm. app. filed*).

As an initial matter, we conclude that the Plaintiff failed to present clear and convincing evidence that Walgreen Company's representatives engaged in fraudulent conduct in connection with the misfilling of Inez Nelms' prescription. In support of his fraud argument, the Plaintiff relies primarily on the discrepancies in Walgreen Company's records, which suggested that Ed Daniel could not have filled Inez Nelms' prescription at 7:19 p.m. on October 2, 1995, because he was scheduled to leave work at 5:00 p.m. on that date. The Plaintiff argues that, from this evidence, a jury could have inferred that Walgreen Company's representatives engaged in fraudulent conduct in an attempt to conceal the fact that a pharmacy technician, and not Daniel, filled Inez Nelms' prescription.

We conclude that this argument is without merit. Although a jury could have found from the foregoing evidence that Ed Daniel was not the pharmacist who filled Inez Nelms' prescription, such a finding would not necessarily lead to the inference that a pharmacy technician rather than a pharmacist filled the prescription. Steve Presson, the pharmacist who was scheduled to work from 1:00 p.m. to 10:00 p.m. on October 2, 1995, testified that either he or Daniel was the pharmacist on duty when the prescription was filled. Thus, the Plaintiff's proof presented two equally probable scenarios: that a pharmacy technician filled the prescription in Ed Daniel's absence and, alternatively, that Steve Presson filled the prescription. Inasmuch as the proof failed to establish that one of these conclusions was more probable than the other, we hold that this proof cannot constitute clear and convincing evidence that Walgreen Company's representatives fraudulently concealed the fact that a pharmacy technician filled Inez Nelms' prescription. *See Bingham v. Knipp*, 1999 WL 86985, at \*4.

Moreover, we note that the Plaintiff failed to assert either in his complaint or at trial

that Walgreen Company's representatives had engaged in fraudulent conduct. Instead, the Plaintiff's claim for punitive damages focused on his allegation that Walgreen Company's representatives engaged in reckless conduct in misfilling Inez Nelms' prescription. Inasmuch as the Plaintiff failed to articulate his fraud theory at trial, we cannot fault the trial court for failing to submit the punitive damages issue to the jury based upon this theory. *See Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) (setting forth general rule that questions not raised in trial court will not be entertained on appeal); *Barnhill v. Barnhill*, 826 S.W.2d 443, 458 (Tenn. App. 1991) (holding that party waives issue by failing to raise it at trial court level).

We likewise conclude that the Plaintiff failed to present clear and convincing evidence that Walgreen Company's representatives engaged in reckless conduct in connection with the misfilling of Inez Nelms' prescription. A person acts recklessly when he "is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d at 901. In the present case, the Plaintiff contended that the following evidence demonstrated recklessness by Walgreen Company's representatives: Walgreen Company permitted medications to be dispensed without verification by a pharmacist; Walgreen Company allowed Ed Daniel to be responsible for filling prescriptions despite the fact that Daniel had been counseled for failing to stay at his workstation to verify prescriptions; Walgreen Company permitted its pharmacy technicians to bag medications; and Walgreen Company scheduled three pharmacy technicians to work with one pharmacist when the Board of Pharmacy's regulations permitted a ratio of only two to one.

We hold that this proof fails to meet the clear and convincing evidence standard required to support a claim for punitive damages.[3] The evidence failed to establish with a high degree of probability that Walgreen Company permitted medications to be dispensed without verification by a pharmacist. Instead, the evidence indicated that, if a pharmacist was unavailable to verify prescriptions, the prescriptions simply accumulated until the pharmacist's return to his

---

[3]In light of our conclusion that the Plaintiff failed to present clear and convincing evidence to support his allegations, we need not decide whether the Plaintiff's allegations, if proven, would support a claim for punitive damages.

workstation. The record contains no evidence that Walgreen Company's pharmacy technicians ever bypassed the Company's verification procedures by dispensing medications without a pharmacist's approval. Similarly, although the evidence was undisputed that Steve Presson counseled Ed Daniel a few times regarding his absence from his workstation, the record contains no evidence that any unverified prescriptions were dispensed during Daniel's shifts. Rather, the evidence showed that the prescriptions accumulated until Daniel returned to his workstation. As for the Plaintiff's complaint that Walgreen Company permitted its pharmacy technicians to bag medications, we note that the Board of Pharmacy's regulations specifically allowed this practice: the Board authorized pharmacy technicians to "[r]etrieve medication from stock, count or measure medication, and place the medication in its final container." Tenn. Comp. R. & Regs. 1140-10-.03(1)(e).[4]

We also reject the Plaintiff's contention that Walgreen Company's violation of the Board of Pharmacy's regulation governing the ratio of pharmacy technicians to pharmacists constituted clear and convincing evidence of recklessness. As we previously stated, in order to be considered reckless, the challenged conduct must demonstrate a conscious disregard of a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the required standard of care. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d at 901. In the present case, the evidence showed that Walgreen Company usually scheduled three pharmacy technicians and two pharmacists to work during various shifts on each weekday. For as long as thirty minutes to one hour of the typical weekday, three pharmacy technicians remained on duty while only one pharmacist worked. Although this 3:1 ratio technically violated the applicable Board regulation permitting only a 2:1 ratio of pharmacy technicians to pharmacists,[5] the evidence failed to show that this scheduling violation constituted a gross deviation from the required standard of care. Any violation occurred

---

[4]The comparable regulation now authorizes pharmacy technicians to "[r]etrieve prescription drugs and devices and related materials from stock, count or measure prescription drugs and devices and related materials, and place the prescription drugs and devices and related materials in the dispensing container." Tenn. Comp. R. & Regs. 1140-2-.02(2)(e) (as revised in July 1998).

[5]The applicable Board regulation formerly provided that

> [t]he actual working ratio of technicians to pharmacists shall not be more than 2:1 in any practice site; provided, however, that for purposes of this rule, a pharmacy intern shall not be considered to be a technician.

Tenn. Comp. R. & Regs. 1140-10-.04.

during only a thirty-minute to one-hour period of the fourteen-hour workday, and the evidence failed to suggest that Walgreen Company's representatives were aware that this scheduling violated a Board regulation or deviated from the required standard of care. Moreover, the rules and regulations promulgated by the Tennessee Board of Pharmacy do not necessarily establish the duty of care owed by a pharmacist, although they may provide guidance in determining if there is a duty of care under the circumstances. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 435 (Tenn. 1994). In any event, we note that Walgreen Company was not violating this regulation at the time Inez Nelms' prescription was filled.[6]

Finally, we reject the Plaintiff's argument that the acts of Walgreen Company's representatives constituted gross negligence because they involved a dangerous or lethal instrumentality. In support of this argument, the Plaintiff cites cases holding that "[a]n act which otherwise would be simple negligence, may amount to gross negligence if it involves a dangerous or lethal instrumentality." *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994) (driving while intoxicated); *accord Phelps v. Magnavox Co.*, 497 S.W.2d 898, 906 (Tenn. App. 1972) (supplying electricity). Although we do not question the validity of this rule, we have found no authority for applying this rule to an action for professional negligence against a pharmacist. The standard of care in an action for a pharmacist's negligence is established by the standard of care required by the pharmacy profession in the same or similar communities. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 434 (Tenn. 1994); *Dooley v. Everett*, 805 S.W.2d 380, 385 (Tenn. App. 1990). Inasmuch as the pharmacy profession determined the applicable standard of care in this case, we see no reason to judicially impose a heightened duty of care on Walgreen Company's pharmacists.

In sum, we agree with the trial court's ruling that, although the evidence in this case

---

[6]We further note that the present regulation now permits a 3:1 ratio of pharmacy technicians to pharmacists under certain circumstances:

> The actual working ratio of pharmacy technicians to pharmacists shall not be more than 2:1 in any pharmacy practice site; provided, however, that the ratio may be increased to a maximum of 3:1 if at least one (1) of the pharmacy technicians is a certified pharmacy technician. For purposes of this rule, a pharmacy intern is not considered to be a pharmacy technician.

Tenn. Comp. R. & Regs. 1140-2-.02(5) (as revised in July 1998).

clearly supported a claim of ordinary negligence, the evidence did not support a finding that Walgreen Company's representatives engaged in reckless conduct such as to constitute a gross deviation from the required standard of care. We reiterate that courts may award punitive damages only in the most egregious of cases. After carefully reviewing the evidence presented in this case, we remain convinced that the trial court properly declined to submit the punitive damages issue to the jury.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Plaintiff, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)