# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 8, 2008 Session

## KAREN CRESPO, ET AL. v. CAROL McCULLOUGH, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 07C2193     Hamilton V. Gayden, Jr., Judge**

---

**No. M2007-02601-COA-R3-CV - Filed October 29, 2008**

---

Karen Crespo and Freddie Crespo filed this medical malpractice action in August 2007, alleging negligence preceding the birth of their daughter, Laura Crespo, in December 2001. The defendants – OB/GYN physician Carol McCullough, OB/GYN nurse Jerilyn H. Boles, Tennessee Women's Care, P.C., and Women's Health Alliance, P.C. – moved for dismissal, claiming the suit is barred by this state's three-year statute of repose for medical malpractice claims, Tenn. Code Ann. § 29-26-116(a) (2000), as interpreted by the Tennessee Supreme Court in *Calaway v. Schucker*, 193 S.W.3d 509 (Tenn. 2005). The plaintiffs allege that the statute is unconstitutional as applied to their case. The State of Tennessee intervened to defend the statute's constitutionality. The trial court dismissed the case, but stated in its order that "Plaintiffs' constitutional arguments are important [and] worthy of review" and "would be best addressed by the appellate courts." The plaintiffs appeal. We hold that *Calaway*'s interpretation of § 29-26-116(a) – extending the statute of repose to minors – effectively overturned a body of law that the plaintiffs had reasonably relied upon, and that the sudden reversal of those precedents, without any opportunity for the plaintiffs to pursue their vested claims, worked a violation of these plaintiffs' due process and equal protection rights. Accordingly, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. D. MICHAEL SWINEY, J., dissented and filed a separate opinion.

David Randolph Smith and Edmund J. Schmidt III, Nashville, Tennessee, for the appellants, Karen Crespo and Freddie Crespo as natural parents and guardians of Laura Elizabeth Crespo, a Minor.

Noel F. Stahl and Jeffrey Zager, Nashville, Tennessee, for the appellees, Carol McCullough, M.D., Tennessee Women's Care, P.C., and Jerilyn Boles, R.N.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and P. Robin Dixon, Jr., Assistant Attorney General, Civil Rights and Claims Division, Nashville, Tennessee, for the intervening appellee, the State of Tennessee.

**OPINION**

I.

For ease of understanding, we will discuss the timeline of events in the instant case alongside the chronology of legal developments affecting the issue before us. The first relevant event occurred in 1975, with the passage of the Tennessee Medical Malpractice Review Board and Claim Act. The pertinent portion of this act, now codified at Tenn. Code Ann. § 29-26-116(a), states as follows:

> (1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104.
>
> (2) In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.
>
> (3) *In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred* except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.
>
> (4) The time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body, in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered.

(Emphasis added.)

As can be seen, the statute indicates that no malpractice claim will be allowed after the three-year repose period has expired, regardless of when the facts underlying the claim were discovered. The statute mentions only two exceptions, for fraudulent concealment and for foreign objects left in the patient's body, neither of which are applicable in this case. However, in the wake of the statute's passage, a question arose as to whether it left open an implied exception for minors and persons of unsound mind, in accordance with the long-standing disability tolling statute, Tenn. Code Ann. § 28-1-106 (2000), which states in pertinent part:

If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, or of unsound mind, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action[.]

§ 28-1-106 is a statute of general applicability; it is not specifically tailored to medical malpractice cases. Nevertheless, in the case of a minor who suffers an injury due to alleged medical negligence during his minority, § 28-1-106 clearly tolls the one-year medical malpractice statute of *limitations*, set forth in Tenn. Code Ann. § 28-3-104 (2000), until the minor's 19th birthday. The question created by the passage of the Medical Malpractice Review Board and Claim Act (sometimes called simply the "Medical Malpractice Act") was whether § 28-1-106 *also* tolls § 29-26-116(a)'s three-year statute of *repose* for medical malpractice actions, or whether the "in no event" language of § 29-26-116(a) prevents such tolling.

The courts first grappled with this issue in a federal case, **Parlato v. Howe**, 470 F.Supp. 996 (E.D. Tenn. 1979), which – much like the instant case – involved a child who was severely injured at birth. The federal district court summarized the issue and ruled as follows:

[T]he question presented to the Court is whether Section [§ 29-26-116(a)] supersedes the operation of Section [§ 28-1-106][1].

Section [§ 29-26-116(a)] has been characterized as "an absolute three-year limit on the time within which actions could be brought." **Harrison v. Schrader**, 569 S.W.2d 822, 826 (Tenn. 1978). One of the major purposes of the statute was to reduce the "extended period during which a physician could be subject to potential liability" because of the rule that causes of action for medical malpractice accrue when the patient discovers, or in the exercise of reasonable care, should have discovered the resulting injury. **Harrison v. Schrader**, *supra*; see **Teeters v. Currey**, 518 S.W.2d 512, 517 (Tenn. 1974).

Defendants argue that the words "in no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred" are to be taken literally. This action was filed February 28, 1979, much more than three years after the alleged negligence [which occurred on September 30, 1971]. Thus, the strict application of Section [§ 29-26-116(a)] would bar the

---

[1] The statutes have been renumbered since the **Parlato** decision, but without substantive changes. For ease of understanding, we have replaced the old statutory citations with the new ones.

action. Defendants argue that Section [§ 29-26-116(a)], as more specific and later in enactment, than Section [§ 28-1-106], is entitled to precedence. Defendants also point out that s 22 of the Malpractice Act provides that:

> All laws or parts of laws inconsistent with the provisions of this Act be and the same are hereby repealed to the extent of such inconsistency.

In the Court's view, Section [§ 29-26-116(a)] was not intended to interfere with the operation of the legal disability statute. . . . The legal disability statute represents a long-standing policy of the State of Tennessee to protect potential causes of actions by minors during the period of their minority. See *Gaugh v. Henderson*, 39 Tenn. 628, 634 (1859). Unlike the discovery rule itself, the legal disability statute does not represent a recent alteration in procedure and is not in any way associated with the "medical malpractice insurance crises" that concerned the legislature in passing Section [§ 29-26-116(a)]. *Harrison v. Schrader*, 569 S.W.2d at 826. Before acknowledging the elimination of such an established policy, this Court would require more evidence of legislative intent than mere silence.

The Court is strengthened in its view by the particularly onerous burden operation of Section [§ 29-26-116(a)] would have upon minors without the legal disability statute. In its normal operation, Section [§ 29-26-116(a)] may have the effect of eliminating a cause of action before it accrues, that is, prior to the discovery of any injury. *Harrison v. Schrader*, 569 S.W.2d at 827-28. The impact upon minors argued for by defendants, however, would be even harsher than that considered by the Tennessee Supreme Court in *Schrader*. Under Section [§ 29-26-116(a)], if an injury is discovered within the three-year period, an adult is at least in a position to protect himself by bringing his action promptly. A minor, especially one who, like plaintiff here, is injured at a very early age, is helpless to protect himself. If Section [§ 29-26-116(a)] is held to eliminate the legal disability statute in medical malpractice cases, the minor could forever lose his cause of action strictly through the neglect of others. This burden upon minors would be so oppressive that the Court cannot reasonably so construe Section [§ 29-26-116(a)] unless clear legislative intent appears.

*Id.* at 998-99 (footnote omitted).

Approximately one month later, the same issue arose in state court when we ruled on ***Braden v. Yoder***, 592 S.W.2d 896 (Tenn. Ct. App. 1979). In that case, involving alleged negligent treatment of a seven-year-old's broken arm, we reversed a trial court order dismissing a malpractice action that was filed more than 11 years after the injury occurred, but "approximately two weeks prior to the plaintiff's nineteenth birthday." ***Id.*** at 897. We initially noted that the key events of that case long pre-dated the passage of the 1975 malpractice statute, and thus the statute "is not applicable to this suit." However, we also stated:

> In Parlato v. Howe, U.S. District Court, Knoxville, filed April 20, 1979, and designated for publication, Judge Taylor held that T.C.A. [§ 29-26-116(a)] did not eliminate the special rights of minors under T.C.A. [§ 28-1-106]. *We agree completely.* There is no legislative intent that such rights be eliminated and to do so would cause harsh results to parties injured at an early age who are helpless to protect their rights.
>
> For the reasons above, we hold that this suit is not barred by the maximum limitation period of T.C.A. [§ 29-26-116(a)].

***Id.*** (emphasis added).

The rule adopted by ***Braden*** remained undisturbed for more than twenty years. It was specifically affirmed by this court in ***Bowers by Bowers v. Hammond***, 954 S.W.2d 752 (Tenn. Ct. App. 1997), another case involving birth-related injuries giving rise to a lawsuit filed more than three years after the child's birth, but while the child was still a minor. Our opinion in ***Bowers*** extensively quotes from both ***Parlato*** and ***Braden***, as well as from an unpublished 1983 opinion cited as ***Adkins v. Martin***, slip op. at 6-9 (Tenn. Ct. App., filed March 28, 1983), which had applied the logic of ***Parlato*** and ***Braden*** to cases involving mentally incompetent plaintiffs. In ***Bowers***, we extensively analyzed all three cases, among others, and then held

> that the trial court erred in entering summary judgment in favor of the Defendants based on the Medical Malpractice Act's three-year statute of repose. Although the Defendants skillfully advance several arguments for why this court should reexamine its holding in ***Adkins***, after doing so, we remain unconvinced that recent developments in this area of the law require us to depart from prior precedent of this court.

***Id.*** at 758. Our holding in ***Bowers***, like the previous holdings, interpreted Tenn. Code Ann. § 29-26-116(a) as implicitly including an exception for minors during their minority, in accordance with Tenn. Code Ann. § 28-1-106.

The Tennessee Supreme Court first touched upon the interplay of § 29-26-116(a) and § 28-1-106 in ***Penley v. Honda Motor Co., Ltd.***, 31 S.W.3d 181 (Tenn. 2000). ***Penley*** was a products liability case, not a medical malpractice case, but the plaintiffs therein cited ***Bowers*** in support of their argument that the similar Tennessee Products Liability Act statute of repose, Tenn. Code Ann. § 29-28-103(a) (2000), should be tolled during a period of mental incompetency. The High Court opined:

> [The] plaintiff urges this Court to follow the approach taken by ***Bowers by Bowers v. Hammond***, 954 S.W.2d 752 (Tenn. Ct. App. 1997), in which the Court of Appeals held that the legal disability statute tolled the three-year medical malpractice statute of repose, Tenn. Code Ann. § 29-26-116, during the minority of the plaintiff. In dicta, the ***Bowers*** court expressed the belief that minority status was synonymous with mental incompetency, and that section 28-1-106 permitted tolling of the statute of repose for mental incompetency as well.
>
> We disagree with the rationale used by the ***Bowers*** court to find implied exceptions for minority and mental incompetence to the three-year medical malpractice statute of repose. The ***Bowers*** holding is in stark contrast to the plain language of the statute, which admits of no tolling other than for fraudulent concealment, and the holding fails to recognize the policies underlying the statute of repose itself. In addition, the ***Bowers*** court seems to have ignored that the plain language of the legal disability statute applies only to toll statutes of limitations rather than statutes of repose.
>
> Despite its imperfect reasoning, though, we note that the actual holding of the ***Bowers*** court does little structural damage to the medical malpractice statute of repose. As we stated earlier, not all types of legal disability affect the running of a statute of repose in the same manner, and an exception for minority [as opposed to an exception for mental incompetency, which is potentially indefinite] merely extends – but does not practically eliminate – the repose period. Because ***Bowers*** has been the law in this state since 1997, and because the General Assembly has made no effort to amend the three-year statute of repose since ***Bowers*** to remove the implied exception for minority, *we recognize that the bench, bar, and the public in general may have various reliance interests in its holding.* Accordingly, we limit the precedential weight of that opinion to its explicit holding that *the three-year medical malpractice statute of repose is tolled during the minority of the plaintiff.* To the extent that the ***Bowers*** dicta can be read to toll any statute of repose for mental

incompetency under Tennessee Code Annotated section 28-1-106,
however, it is overruled.

*Penley*, 31 S.W.3d at 188 (emphasis added).  It bears repeating that *Penley* was a products liability case, not a medical malpractice case, and thus the last paragraph quoted above is technically dicta. Nevertheless, that *Penley* dicta, even while criticizing the "imperfect reasoning" of *Bowers*, explicitly endorsed *Bowers*'s core holding: that, in the Supreme Court's words, "the three-year medical malpractice statute of repose is tolled during the minority of the plaintiff."  The *Penley* opinion was released on August 25, 2000.

On December 24, 2001, Laura Crespo was born.  According to the plaintiffs' complaint, she sustained severe injuries at birth due to "oxygen deprivation at and near birth associated with an abruption of Mrs. [Karen] Crespo's placenta [several hours before Laura Crespo's birth].  Laura sustained 'hypoxic ischemic encephalopathy' as a result of a concealed placental abruption."  The plaintiffs claim that the defendants committed negligence in failing to promptly recognize the emergency situation and tell the Crespos to go immediately to the hospital.  Their complaint states that this negligence caused "a failure to timely diagnose" the problem, which "has left Laura Crespo with major life-altering disabilities."

At some point "more than one year" after Laura Crespo's birth, her parents retained legal counsel.  Various steps were taken in preparation for a possible lawsuit.  The parties exchanged information and corresponded about various medical records that the prospective plaintiffs sought to obtain.  The Crespos say they hoped to settle the case, and proceeded in part with that goal in mind.  In accordance with the courts' then-operative interpretation of the law of this state – under *Penley*, *Bowers* and the earlier cases – there was no apparent hurry to file suit, as Tenn. Code Ann. § 28-1-106 would toll both the statute of limitations and the statute of repose during the period of Laura Crespo's minority, allowing the Crespos to file suit at any time before Laura Crespo's nineteenth birthday.

Then, on December 9, 2005, the legal situation changed suddenly and dramatically with the release of the Tennessee Supreme Court's opinion in *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509 (Tenn. 2005).  That case had begun in federal court in September 2002, when a minor plaintiff and her mother filed a medical malpractice claim relating to injuries sustained at birth in February 1996.  The federal district court certified a series of questions to the Tennessee Supreme Court, including: "Is the three-year statute of repose for medical malpractice in Tennessee Code Annotated section 29-26-116, which contains no exception for minority, tolled during a plaintiff's minority?"  In its *Calaway* opinion, the Supreme Court, by a 3-2 vote, answered this question in the negative, overruling the identical *Braden* and *Bowers* holdings and casting aside the *Penley* dicta. The Court explained its ruling thusly:

> This case presents us with our first direct opportunity to address the
> question whether the minority provisions of Tennessee's legal
> disability statute, Tennessee Code Annotated section 28-1-106, toll

the medical malpractice statute of repose, Tennessee Code Annotated Section 29-26-116(a)(3).

* * *

We recognize that the Legislature may, in some instances, allow plaintiffs to commence a lawsuit despite the absolute nature of applicable statutes of repose. For example, we find a clearly stated exception in the medical malpractice statute of repose for fraudulent concealment. *See* Tenn.Code Ann. § 29-26-116(a)(3). The plaintiff's amicus here argues that the legal disability statute, Tennessee Code Annotated section 28-1-106, was intended by the Legislature to serve as an exception to the medical malpractice statute of repose, citing in support a string of cases from lower state courts and one federal court. *See, e.g.*, **Parlato v. Howe**, 470 F.Supp. 996 (E.D. Tenn. 1979); **Braden v. Yoder**, 592 S.W.2d 896 (Tenn. Ct. App. 1979), **Bowers v. Hammond**, 954 S.W.2d 752 (Tenn. Ct. App. 1997).

We respectfully disagree with the plaintiff's amicus' argument. As we have stated above, the medical malpractice statute of repose imposes an absolute three-year bar on such actions, with the exception of the exemptions in the statute itself. In **Penley**, we stated that "when the General Assembly has desired that exceptions apply to a statute of repose, ... the exception is either found with the language of the statute itself, or in another part of the code specifically referencing the particular statute of repose." **Penley**, 31 S.W.3d at 184-85. We find neither requirement satisfied in this case for minority. The medical malpractice statute of repose contains no express exception for minors. Neither does any other part of the Code, including the legal disability statute, reference the statute of repose with respect to minors.

* * *

Although it is true that we did, in **Penley**, acquiesce in the **Bowers** holding by "limit[ing] the precedential weight of [the **Bowers**] opinion to its explicit holding that the three-year medical malpractice statute of repose is tolled during the minority of the plaintiff," 31 S.W.3d at 185, we chose not to overrule **Bowers** because the issue was not squarely presented in that case, as it is here. Moreover, the plaintiff's reliance on this statement is misplaced because our acquiescence was clearly in dicta. Not only did the two cases come to differing conclusions – **Penley** declining to find an exemption for

mental incompetents to Tennessee's products liability statute of repose, and ***Bowers*** implicitly finding an implied exemption for minors to the medical malpractice statute of repose – the respective bases upon which the two holdings rested were entirely different as well. In fact, we expressed our total disagreement with the reasoning employed by the ***Bowers*** court to reach its holding.

> We disagree with the rationale used by the ***Bowers*** court to find implied exceptions for minority and mental incompetence to the three-year medical malpractice statute of repose. The ***Bowers*** holding is in stark contrast to the plain language of the statute, which admits of no tolling other than for fraudulent concealment, and the holding fails to recognize the policies underlying the statute of repose itself.

> ***Id.***, 31 S.W.3d at 188.

> We now expressly overrule the ***Bowers*** and ***Braden*** courts and hold that the plaintiff's minority does not toll the medical malpractice statute of repose.

***Calaway***, 193 S.W.3d at 514-17.

The ***Calaway*** decision did not recite or specifically address the Court's previous statement, in ***Penley***, that "[b]ecause ***Bowers*** has been the law in this state since 1997, and because the General Assembly has made no effort to amend the three-year statute of repose since ***Bowers*** to remove the implied exception for minority, we recognize that the bench, bar, and the public in general may have various reliance interests in its holding." ***Penley***, 31 S.W.3d at 188. However, in response to a petition to rehear filed by the plaintiffs in that case, the Court did amend its ***Calaway*** opinion on February 21, 2006, to limit its holding as follows:

> In order to avoid undue hardship to potential plaintiffs who have relied upon the ***Bowers*** rule, the new rule we announce today is to have prospective application only. Therefore, *for cases commenced on or before December 9, 2005*, we hold that the plaintiff's minority tolls the medical malpractice statute of repose. For cases commenced after December 9, 2005, we hold that the plaintiff's minority does not toll the medical malpractice statute of repose.

***Calaway***, 193 S.W.3d at 518 (emphasis added). As noted earlier, December 9, 2005, was the date the original ***Calaway*** opinion was released. Thus, although the February 21, 2006, order on petition to rehear made ***Calaway*** "prospective" in the sense that it did not change the rules for any *lawsuits*

-9-

*filed* before its release date, ***Calaway*** still retrospectively barred any *as-yet unfiled claims* relating to *injuries* that occurred more than three years before the release of the original opinion. Thus, the amended ***Calaway*** opinion still does not address the "reliance interests" of potential plaintiffs, like the Crespos, who waited more than three years to file suit *and were still waiting when **Calaway** was released*.

The Crespos attempted to intervene in ***Calaway***, filing a motion on December 19, 2005, requesting leave to appear as *amicus curiae* in the ***Calaway*** case upon rehearing. They also filed a proposed *amicus* brief with the Court. The Court rejected the Crespos' motions on February 21, 2006, in the same order that announced the amended opinion. Accordingly, the Crespos' arguments were never actually before the Court in ***Calaway***.

Although the plaintiffs in ***Calaway*** had filed suit in September 2002, well before the December 2005 deadline, they nevertheless filed a *second* motion to rehear, asking the Court to "give prospective application of the newly announced rule to cases involving *injuries occurring* after December 9, 2005, rather than to *cases commenced* after this date." ***Calaway***, 193 S.W.3d at 522 (emphasis in original). This motion was denied on September 13, 2007, with a simple statement: "Upon due consideration, we conclude that the appellants' petition is not well-taken and should be denied." ***Id.*** The High Court did not elaborate further on its reasoning.

The Crespos filed their lawsuit in the instant case on August 2, 2007. The first page of their complaint describes the case as "a medical malpractice lawsuit and constitutional challenge." The constitutional grounds are listed as "[d]ue process, equal protection and improper retroactive application of law." As we interpret the Crespos' argument, their constitutional arguments actually fall into two distinct, overarching categories: 1) that ***Calaway***'s interpretation of § 29-26-116(a) is unconstitutional, on both due process and equal protection grounds, as applied to *all minors* (or at least all minors injured at birth); and 2) that ***Calaway***'s partially retroactive application is unconstitutional, on both due process and equal protection grounds, insofar as it bars the claims of minors injured before ***Calaway*** who were unable to file suit within three years of their injuries because of the abrupt change in the law worked by the ***Calaway*** decision. As will be seen, we do not reach the first set of arguments, but rather base our decision entirely on the second set, relating to ***Calaway***'s retroactivity.

The defendants filed a motion to dismiss on September 7, 2007. The trial court heard oral arguments on the motion to dismiss, and on November 8, 2007, the court dismissed the case. However, as noted earlier, the court declared the plaintiffs' constitutional arguments "important [and] worthy of review" by the appellate courts. The trial court also stated that the plaintiffs' claims are "supported by record evidence to provide a factual and legal basis for the as-applied challenge." Specifically, the court wrote that the plaintiffs "have presented affidavit proof from experts establishing that Laura Crespo received severe brain injuries at birth," and added that evidence in the record shows that "medical records and films were still being gathered at the time the three-year statute of repose had expired." The plaintiffs timely appealed.

II.

A.

This case presents a pure question of law, which we review *de novo* with no presumption of correctness. **Stein v. Davidson Hotel Co.**, 945 S.W.2d 714, 716 (Tenn. 1997). Our decision turns upon the question of whether the Supreme Court's decision in **Calaway**, which effectively "ran out the clock" on the Crespos' claim with no prior warning, worked a deprivation of these plaintiffs' due process or equal protection rights under the state and federal constitutions.[2]

Obviously, we are bound by the **Calaway** decision. "This court does not have the prerogative to disregard decisions of the Tennessee Supreme Court." **In re Estate of Greenamyre**, 219 S.W.3d 877, 883 (Tenn. Ct. App. 2005). On the contrary, "we are obliged to follow the directions of the Tennessee Supreme Court, particularly after the 'court has given definite expression to its views in a case after careful consideration.' " **Id.** (quoting **Holder v. Tenn. Judicial Selection Comm'n**, 937 S.W.2d 877, 881 (Tenn. 1996)). However, the constitutional issues raised herein were not before the Court in **Calaway**, nor were *these* plaintiffs and *their* rights at issue in that case. The only constitutional claims adjudicated in **Calaway** were a pair of equal protection and due process arguments *by the defendant doctor*.[3] The Crespos' attempt to raise *their* constitutional claims in **Calaway** was thwarted when the Court declined their request to intervene in the case, and the Court's denial of the **Calaway** plaintiffs' second motion for rehearing does not spell out the rationale of that decision. Certainly, that denial of a second rehearing did not "give[] definite expression to [the Court's] views" on these constitutional questions. **Holder**, 937 S.W.2d at 881. In short, the Court's opinion in **Calaway** simply does not answer the constitutional questions raised by the plaintiffs in this case. Accordingly, we conclude that this case presents a matter of first impression with regard to the impact of **Calaway** on the constitutional rights of plaintiffs in the Crespos' position, and we proceed on that basis.

---

[2] Our holding for the plaintiffs on this issue pretermits consideration of their broader claim that **Calaway**'s interpretation of Tenn. Code Ann. § 29-26-116(a) is unconstitutional as applied to *all minors*, or all minors injured at birth.

[3] The first equal protection argument by the doctor in **Calaway** challenged the application of the old **Bowers** rule to her pre-December 2005 case. That issue is relevant, if at all, only to the Crespos' broader constitutional argument regarding "all minors," which we do not reach here. The **Calaway** doctor's second equal protection argument asserted that the *prospective* aspect of the **Calaway** ruling unfairly *favors* those lucky *defendants* whose alleged malpractice victims did not sue them prior to the release of the **Calaway** decision. This is essentially the mirror image of the plaintiffs' equal protection argument that we will address later in this opinion: that the *retrospective* aspect of the **Calaway** ruling unfairly *disadvantages* those unlucky would-be *plaintiffs* who did not happen to sue their alleged tortfeasors prior to the release of the **Calaway** decision. Although these arguments are structurally similar, the equities and considerations involved in adjudicating them are so different that we cannot draw any meaningful conclusions from the Supreme Court's rejection of the defendant doctor's argument in **Calaway**. As for the due process arguments raised by the doctor in **Calaway** after the motion for rehearing by the plaintiffs in that case, one was rendered moot by the Court's rejection of that motion, and the other requests a balancing of interests that has no applicability to this case.

-11-

We believe that the abrupt change in the law created by the ***Calaway*** decision deprived the plaintiffs of both their due process rights and their equal protection rights. We will discuss due process first, then proceed to equal protection.

Before discussing either issue in detail, however, we wish to emphasize that our conclusion does not imply any criticism of – still less any attempt to overturn the binding dictates of – the Supreme Court of this state. As we have already pointed out, the High Court did not have these plaintiffs or these facts before it when ***Calaway*** was argued. By limiting ***Calaway***'s holding to "cases commenced after December 9, 2005," the High Court protected the rights of the parties in *that case*, in the situation presented by *that record*. The Court also ensured that other plaintiffs with active cases, filed before ***Calaway***, would not suffer a "hardship" because they "justifiably relied upon the old precedent." ***Marshall v. Marshall***, 670 S.W.2d 213, 215 (Tenn. 1984). However, ***Calaway*** did not address – and did not purport to address – the plight of plaintiffs like the Crespos, who had been preparing their case for several years, secure in the knowledge that they would not be penalized for their delay – until ***Calaway*** suddenly, in essence, pulled the rug out from under them. It is *that* situation, quite different from the one ***Calaway*** presented to the Supreme Court, which, we now hold, created constitutional violations.

We recognize that it is somewhat unusual to find that the due process and equal protection guarantees were violated by the application and timing of a judicial decision, rather than by the application of a statute. The ***Marshall*** case just cited, in discussing the issue of retroactive versus prospective application of judicial decisions overturning previously relied-upon precedents, does not mention either due process or equal protection, nor does ***Hill v. City of Germantown***, 31 S.W.3d 234 (Tenn. 2000), which is cited by the plaintiffs for the proposition that ***Calaway***'s application to this case is impermissibly retroactive. Both of these opinions state that new precedents will be denied retroactive effect "only if such an application would work a hardship upon those who have justifiably relied upon the old precedent," ***Hill***, 31 S.W.2d at 239 (quoting ***Marshall***, 670 S.W.2d at 215), but this rule is not explicitly framed in constitutional terms. In the instant case, however, we believe that not just "hardship," but constitutional violations, are manifest – every bit as much as if a newly enacted statute had violated an individual's due process or equal protection rights. We now proceed to explain why this is so.

## B.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Law of the Land Clause of the Tennessee Constitution states that no person "shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Art. I, § 8. These constitutional provisions are "synonymous." ***Daugherty v. State***, 393 S.W.2d 739, 743 (Tenn. 1965).

-12-

Both provisions recognize a substantive due process interest in an vested, existing cause of action. "It is well settled that a vested right of action is as much property as are tangible things and is protected from arbitrary legislation." *Morris v. Gross*, 572 S.W.2d 902, 905 (Tenn. 1978). "Such a vested right of action enjoys the full protection of the due process clauses of the Federal and State Constitutions." *Id.* Furthermore, notwithstanding the "the general rule that no one has a vested right in a particular remedy for the enforcement of a right of action," and thus "the legislature ordinarily may change existing remedies for the enforcement of rights, including those which have already vested," such a change may work a violation of due process rights if it fails to provide "a substantial remedy to redress that right by some effective procedure." *Id.* As the Supreme Court stated in a post-*Calaway* case, in which the plaintiffs challenged the application of the three-year statute of repose to cases of mental incompetency,

> [i]t is correct to say that *the plaintiffs' vested right of action for medical malpractice in this case enjoys constitutional protection.* Mr. Mills' cause of action accrued in February 1997, when the plaintiffs first discovered that he had Wilson's Disease. A vested right of action in tort is a cause of action which has accrued, thereby becoming presently enforceable. *See **Jones v. Morristown-Hamblen Hosp. Assoc., Inc.***, 595 S.W.2d 816, 820-21 (Tenn. Ct. App. 1979). Vested rights of action in tort may be classified as constitutionally-protected property interests. "[A] vested right of action is as much property as are tangible things ... and enjoys the full protection of the due process clauses of the Federal and State Constitutions." *Morris v. Gross*, 572 S.W.2d 902, 905 (Tenn. 1978); *see also **Logan v. Zimmerman Brush Co.***, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause.").

*Mills v. Wong*, 155 S.W.3d 916, 921 (Tenn. 2005) (emphasis added).[4]

Of course, as *Mills* also states, "a rationally-based statute of repose validly extinguishes not only unaccrued causes of action, but also causes of action which have already accrued and vested as rights." *Id.* at 922. However, in accordance with the language of *Mills*, and more generally with simple common sense, we hold that the Crespos' right to sue *was vested* at the time the *Calaway* opinion was released, and that their vested right had not yet been extinguished at that time. Under

---

[4] It should also be noted that the Court in *Mills* specifically did not address the retroactivity issue that is present in the instant case. Indeed, a footnote in *Mills* explicitly points out that "[t]he disturbance of vested rights through retroactive legislation . . . implicates a different constitutional question which is not at issue in this case." *Mills*, 155 S.W.3d at 922, n.5. That "different constitutional question" is essentially what is at issue here: whether the effective change in the law worked by *Calaway*, which suddenly and unexpectedly eliminated plaintiff's ability to pursue their existing legal claim, constitutes an impermissible "disturbance of vested rights through retroactive legislation"– or rather, in this case, retroactive judicial interpretation of legislation.

the law of this state as it was understood to exist prior to ***Calaway***, there was no applicable statute of repose, rationally based or otherwise, that could have extinguished it. Thus, it was the sudden change in the law caused by ***Calaway***, rather than the natural running of a pre-existing statute of repose, that effectively cut off the Crespos' vested rights. This fact gives rise to the Crespos' due process claim, and distinguishes this case from others in which statutes of repose have been upheld.

The defendants contend that ***Calaway*** did not work a change in the law, but rather "interpreted the Act as originally enacted," ***Murvin v. Cofer***, 968 S.W.2d 304, 310 (Tenn. Ct. App. 1997). Thus, they argue, the Crespos' vested right to sue expired not on December 9, 2005, when ***Calaway*** was released, but rather on December 25, 2004, when the statute of repose – as interpreted by ***Calaway***, almost a year later – ran. "The Supreme Court's . . . decision in ***Calaway*** did not strip away her cause of action," the defendants argue. Rather, they say, the Court "simply interpreted that statute and set forth what always has been the law; namely, that the statute of repose is not tolled by a plaintiff's minority." Although we follow the defendants' logic, we think such a conclusion would be monumentally unjust on these facts. Whether or not it is technically defined as "new law," ***Calaway*** completely altered the legal situation facing these parties. Neither party in this case had any reason to believe, on December 25, 2004, that there was an applicable statute of repose. The courts, including the Supreme Court, were unanimous that § 29-26-116(a) did not apply.

Nevertheless, the defendants argue that we cannot consider ***Calaway*** to have "changed" the law. In support of this conclusion, they cite our language in ***Murvin***, a Consumer Protection Act case in which we reversed the trial court's ruling because the Supreme Court had announced a new interpretation of the governing statute during the intervening period between trial and appeal. In declining to limit the subject Supreme Court opinion, ***Ganzevoort v. Russell***, 949 S.W.2d 293 (Tenn. 1997), to prospective application only, we wrote that

> the Supreme Court [in ***Ganzevoort***] held, in effect, that the Act has *never* been applicable to [facts such as those in the case at issue]. The fact that there was a [previous] holding of a federal district court and a decision of the Court of Appeals to the contrary does not change this fact. This is not a case where the Supreme Court *changes* the law and specifically limits the cases to which it is applicable. *See, e.g.*, ***McIntyre v. Balentine***, 833 S.W.2d 52, 58 (Tenn. 1992). The Supreme Court interpreted the Act as originally enacted. This means that the inapplicability of the Act to [facts such as these] has always been the law even though it was only recently pronounced authoritatively by the Supreme Court.

968 S.W.2d at 309-10. There are at least three key differences between ***Murvin*** and the instant case. First, that case simply did not involve the sort of extensive "reliance interests," in ***Penley***'s words, that are present here. The level of fundamental unfairness that would be implicated by a contrary ruling in this case is therefore far higher. Secondly, the ruling in ***Ganzevoort***, which dictated the result in ***Murvin***, involved the construction of a single, specific statute; the ruling in ***Calaway***, by

-14-

contrast, involves the interpretation of the interplay between two separate statutes, Tenn. Code Ann. § 29-26-116(a) and Tenn. Code Ann. § 28-1-106. Thus, as the plaintiffs write in their reply brief, "[a]lthough the 1975 statute may have always meant what it meant (as pronounced in *Calaway* in 2005), [the plain language of that statute] did not answer what . . . the 1975 statute did *vis-a-vis* the 1858 disability statute that had always protected minors."

Thirdly, and perhaps most importantly, *Ganzevoort* did not alter a precedent that the Supreme Court itself had previously endorsed. It merely overruled an interpretation by the Court of Appeals and a federal court. By contrast, in this case, the Court in *Calaway* effectively reversed its own prior statements in *Penley*. The Supreme Court overruled a Court of Appeals precedent that *it had announced*, five years earlier in *Penley*, that it would let stand. The plaintiffs in the instant case, by waiting more than three years to file suit, were relying upon a body of apparently settled law that had been given the explicit imprimatur of the Supreme Court. This creates a far different situation than a case, like *Murvin*, in which the parties had assumed that prior *lower court* interpretations of a statute were valid. It is very difficult to fault the bench, bar and public for conducting themselves in a manner that presumes a clearly stated Supreme Court opinion is valid and operative.

We are not unmindful of the fact that the Court's statement in *Penley* was technically dicta. However, it would be unreasonable to expect the parties in this case to have simply ignored it. Indeed, such an expectation would be not just unreasonable, but contrary to law, as the Supreme Court made clear in *Holder*:

> [T]rial courts must follow the directives of superior courts, particularly when the superior court has given definite expression to its views in a case after careful consideration. Accordingly, inferior courts are not free to disregard, on the basis that the statement is *obiter dictum*, the pronouncement of a superior court when it speaks directly on the matter before it, particularly when the superior court seeks to give guidance to the bench and bar. To do otherwise invites chaos into the system of justice.

937 S.W.2d at 881-82 (Tenn. 1996) (citations omitted). It could hardly be more clear that the Court's statement in *Penley* was intended to "give guidance to the bench and bar," in light of the language that straightforwardly premises its conclusion on the fact that "the bench, bar, and the public in general may have various reliance interests in [*Bowers*'s] holding." *Penley*, 31 S.W.3d at 188. It is equally apparent that *Penley*'s dicta "speaks directly on the matter" at issue in the instant case: it announced the continuing validity of the "holding that the three-year medical malpractice statute of repose is tolled during the minority of the plaintiff," precisely the issue in this case. *Id.* Accordingly, "inferior courts [were] not free to disregard" *Penley* prior to the release of *Calaway* – nor, presumably, were members of the bar and the public, whose "reliance interests" the Court premised its conclusion upon.

-15-

Having concluded that the plaintiffs' right to sue was vested and existing on the date of *Calaway*'s release, the conclusion that *Calaway* violated the plaintiffs' due process rights follows naturally. The United States Supreme Court articulated the relevant principle in *Terry v. Anderson*, 95 U.S. 628, 632-33 (1877), stating: "This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, *if a reasonable time is given for the commencement of an action before the bar takes effect*." (Emphasis added.) Although this case involves a statute of repose, rather than a statute of limitations, the underlying principle is the same. A "reasonable time" is what is missing here. The *Calaway* decision allowed *no* time for plaintiffs in the Crespos' position to file suit – unless one considers whatever brief period of hours may have existed between the release of the opinion on December 9, 2005, and the stroke of midnight on December 10. This minuscule period is obviously insufficient to give prospective plaintiffs like the Crespos a "reasonable" opportunity to adjust to the new precedent and file their long-planned lawsuits – and in any case, the significance of this extremely brief window did not become apparent until *Calaway* was amended more than two months later.

The need for a "reasonable time" in such circumstances was more recently noted by a court of this state in *State v. Sumlin*, No. 02C01-9204-CR-00095, 1993 WL 15177, at *2 (Tenn. Cr. App., filed January 27, 1993) (quoting 51 Am.Jur.2d Limitation of Actions § 27), which stated that existing time limitations on civil actions may be shortened "without violating constitutional guaranties . . . provided a reasonable time is allowed for the enforcement of existing causes of action," and that new limitations may be imposed, provided that the new limitation is "not made applicable to an existing cause of action in such a way as to *preclude any opportunity to bring suit*." (Emphasis added.) Here, the abrupt change in parties' legal situation, caused by *Calaway*, did indeed preclude any opportunity for the Crespos to bring suit.

To summarize: because of *Calaway*'s immediate applicability, the plaintiffs were denied *any* process by which to vindicate their vested legal rights, through absolutely no fault of their own. They had every reason to rely on *Bowers* and the other related cases – *especially* after the Supreme Court in *Penley* explicitly stated, albeit in dicta, that the *Bowers* precedent was valid in situations like this one. So they bided their time, gathering information and communicating with the defendants at a relatively leisurely pace, which was perfectly reasonable given the clearly stated law at the time. Then, nearly four years after Laura Crespo's birth, at a time when the plaintiffs were still awaiting responses from the defendants on various requests for medical records, *Calaway* suddenly and instantly invalidated the Crespos' cause of action and gave them no recourse to salvage it. If *Calaway* had created, for example, a one- or two-year window for plaintiffs in the Crespos' position to file suit, that would have been an entirely different situation. But, as things transpired, no window at all was announced, and the Crespos' due process rights were clearly violated.

For all of the reasons stated above, we find that *Calaway* worked a violation of these plaintiffs' due process rights, and accordingly, we reverse the trial court's dismissal of their case. In so holding, we do not alter the general rule that revised judicial interpretations of statutes usually apply retrospectively, *Hill v. City of Germantown*, 31 S.W.3d 234, 239 (Tenn. 2000), nor do we suggest that a constitutional violation occurs in *each and every* case where retroactive application

would lead to some hardship, or where some degree of reliance on prior rulings can be shown. Our holding is limited to these facts, which we believe present an unusually stark example of clear reliance on apparently settled law that, after being endorsed by the Supreme Court, is upended by a swift and sudden reversal that completely changes the parties' legal situation and leaves the plaintiffs with no recourse to pursue their rights. Most retrospective applications of judicial decisions do not violate anyone's due process. This one, however, does.

C.

In addition to the due process violation, there is another constitutional problem here, which constitutes a separate, independent ground for reversal of the result below. As we have already stated, this case has an equal protection dimension as well. "The concept of equal protection espoused by the federal and our state constitutions guarantees that 'all persons similarly circumstanced shall be treated alike.' " *Tennessee Small School Systems v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). For purposes of our analysis, the "persons similarly circumstanced" are a real person – Laura Crespo, the primary plaintiff herein – and a hypothetical person, a plaintiff who was injured on the same day as Laura Crespo, and who (like Laura Crespo) waited more than three years to file suit, but (unlike Laura Crespo) filed suit prior to the *Calaway* decision.[5]

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, while the Tennessee Constitution states that the

> Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie[s] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Tenn. Const. art. XI, § 8. In addition, the earlier-quoted Law of the Land Clause of the Tennessee Constitution, Tenn. Const. art. I, § 8, has been interpreted as guaranteeing not just due process, but equal protection as well. *State v. Tester*, 879 S.W.2d 823, 827 (Tenn. 1994). As with due process, the federal and state equal protection guarantees are essentially synonymous. As *Calaway* itself noted, the Supreme Court of this state has "consistently held that the state equal protection guarantee is co-extensive with the equal protection provisions of the Fifth and Fourteenth Amendments of the

[5] It is worth noting that the defendants' argument that *Calaway* did not change the law, but merely clarified what the law has always said, has no applicability to the equal protection issue. As the plaintiffs note in their reply brief, "[o]bviously *Calaway* created *new law* on February 21, 2006 when, on rehearing, the Court ruled that minors who sued before December 9, 2005 may rely on tolling and *Bowers* whereas those who filed afterwards are time-barred and get no tolling. The statute as passed by the Tennessee legislature in 1975 makes no such distinction[.]"

U.S. Constitution." *Calaway*, 193 S.W.3d at 518. While acknowledging the "linguistic and historical differences" between the federal and state equal protection provisions, the Tennessee Supreme Court has "generally used an analytical framework similar to that used by the United States Supreme Court" in analyzing both guarantees. *State v. Robinson*, 29 S.W.3d 476, 480-81. "[W]e apply one of three standards of scrutiny: (1) strict scrutiny, (2) heightened scrutiny, and (3) reduced scrutiny, applying the rational basis test." *Id.* In the instant case, wherein the "persons similarly circumstanced" are differentiated in the law not by their membership in any protected class, but rather by the timing of their lawsuits, rational basis scrutiny applies.

Although rational basis scrutiny is the least exacting form of equal protection scrutiny, it is exacting enough to reveal the constitutional infirmity of *Calaway*'s application to these plaintiffs. It is simply irrational for the law to make such a pivotal distinction between these plaintiffs and plaintiffs who may have suffered injury on the same day as these plaintiffs, or even before, but who happened – by pure luck – to file suit just before *Calaway* was released. The defendants contend otherwise, arguing that

> the fallacy of plaintiffs' suggestion that the Supreme Court lacked a rational basis for any retroactive application is readily apparent. Excluding from the application of *Calaway* those medical malpractice claims of minors for whom suit already had been filed resulted in no further tolling or extension of the statute of repose and no unknown, unquantifiable inventory of unfiled minor's medical malpractice claims as to which the statute of repose would not run for up to eighteen more years. In contrast, the further exclusion from the application of *Calaway* of those medical malpractice claims of minors, such as Laura Crespo, for whom suit had not yet been filed would have forestalled the proper application of the statute of repose in an unknown number of claims for potentially in excess of eighteen years. The Supreme Court had a rational basis for seeking to avoid such a circumstance.

We do not agree. The defendants' argument might well make out a rational basis for creating only a brief, narrow post-*Calaway* time window in which new plaintiffs, like the Crespos, could file suit – certainly a shorter period than "eighteen more years." However, we do not believe the alarmist specter of an "unknown, unquantifiable inventory of unfiled . . . claims" can rationally justify such stark discrimination between similarly situated plaintiffs differentiated only by pure luck.

As we have already stated, there was no valid reason for anyone to presume, before *Calaway*, that the statute of repose might be applicable to minors: the Supreme Court had plainly stated otherwise, as had the other courts of this state that had passed on the question. Thus, it cannot be said that disadvantaging these plaintiffs because they failed to file suit before *Calaway* is a rational penalty for their delay. There was simply no reason for them to believe that time was of the essence. Nor was there any reason for our hypothetical plaintiffs, who waited more than three years but then

filed suit just *before **Calaway***, to believe that this earlier filing was particularly beneficial under the law as it then existed. It is pure happenstance that distinguishes between these two classes of individuals, and happenstance is not a rational basis for treating "persons similarly circumstanced" differently – especially when the difference is such that one party has full legal recourse, and the other has no recourse whatsoever.

While the federal and state constitutions require that "all persons similarly circumstanced shall be treated alike," they of course do *not* require equal treatment of "things which are different in fact or opinion." ***Doe v. Norris***, 751 S.W.2d 834, 841 (Tenn. 1988). Normally, "[t]he initial discretion to determine what is 'different' and what is 'the same' resides in the legislature[]." ***Id.*** (quoting ***Plyler v. Doe***, 457 U.S. 202, 216 (1982)). However, in the instant case, because a judicial decision rather than a statute caused the change in the law that triggers our equal protection analysis, that initial determination resides in the courts. Nevertheless, we would not hold that a constitutional violation had occurred if we could find a rational basis for the distinction between plaintiffs who, relying on prior precedents, filed suit after three years but before ***Calaway***, and plaintiffs who, relying on prior precedents, waited more than three years and were still waiting when ***Calaway*** was released. However, as we have already stated, we can find no such rational basis. Therefore, we must conclude that the plaintiffs' equal protection rights were violated, and accordingly reverse the trial court's dismissal of the case.

III.

The judgment of the trial court is reversed. Costs on appeal are taxed to the appellees, Carol McCullough, M.D.; Tennessee Women's Care, P.C.; Jerilyn Boles, R.N.; and the State of Tennessee. This case is remanded to the trial court for further proceedings.

_____
CHARLES D. SUSANO, JR., JUDGE